UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 3:13-CV-30070-KPN

KATIE GRAF,
Plaintiff,

v.

HOSPITALITY MUTUAL INSURANCE COMPANY,
Defendant.

**MEMORANDUM OF LAW OF THE PLAINTIFF IN OPPOSITION TO
THE MOTION TO DISMISS OF THE DEFENDANT,
WITH REQUEST FOR ORAL ARGUMENT**

*1.     Introduction.*

Katie Graf, the plaintiff in this matter ("Graf"), hereby opposes the motion of the defendant, Hospitality Mutual Insurance Company ("Hospitality"), to dismiss her complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Graf maintains that her complaint alleges facts which clearly demonstrate that she will prevail on her claims.  At the least, the facts before the court "plausibly suggest her entitlement to relief" in the nature of coverage under the liability insurance policy written by Hospitality and at issue in this case.  The motion to dismiss should therefore be denied.

*2.     The Rule 12(b)(6) Standard.*

A motion to dismiss for "failure to state a claim upon which relief can be granted," under Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  To

pass that test, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." *Fantini v. Salem State Coll.,* 557 F.3d 22, 26 (1st Cir. 2009) quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).  In the familiar lore, a trial court reviewing a complaint under Rule 12(b)(6) "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiff[ ]." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,* 632 F.3d 762, 771 (1st Cir. 2011) quoting *SEC v. Tambone,* 597 F.3d 436, 441 (1st Cir. 2010).

Under Rule 12(b)(6), the court should be mindful that a complaint only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  Thus, a plaintiff need only allege facts sufficient to show that the claim is "plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The alleged facts need only "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

While a plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully" *id*. at 1950 (noting that plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"), the court must nonetheless indulge all reasonable inferences in the plaintiff's favor. *Cook v. Gates,* 528 F.3d 42, 48 (1st Cir. 2008).  In reviewing Graf's complaint, the court cannot " 'disregard properly pled factual allegations' nor 'attempt to forecast a plaintiff's likelihood of success on the merits.' " *Juarez v. Select Portfolio Servs., Inc.,* 708 F.3d 269

(1st Cir. 2013) citing *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir. 2011) and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Moreover, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief". *Ashcroft v. Iqbal*, 556 U.S. 662, 679. Indeed, the First Circuit has ruled that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." *Sepulveda–Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

In light of these principles, a complaint should well survive a Rule 12(b)(6) dismissal if "the facts, evaluated in [the required] plaintiff-friendly manner, contain enough meat to support a reasonable expectation that an actionable claim may exist." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir.2008). See also *Chao v. Ballista*, 630 F.Supp.2d 170, 177 (D.Mass. 2009) (describing *Thomas v. Rhode Is.*, 542 F.3d 944, 948 (1st Cir.2008), as "juxtaposing Rule 8(a)'s fair notice and plausibility requirements"). In the final analysis, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *OcasioHernandez v. Fortuno–Burset,* 640 F.3d 1, 12 (1st Cir.2011).

3. *The Factual Averments.*

In reciting the factual averments of the complaint, and the facts otherwise relevant to Graf's claims and its motion to dismiss, Hospitality has appended to its Memorandum

of Law various materials, including the Hospitality insurance policy, various pleadings from the underlying tort litigation and the Settlement Agreement between Graf and Torcia & Sons, Inc. ("Torcia") and Hospitality.[1] Graf does not dispute these facts and argues only that she is entitled to all favorable and reasonable inferences in a plaintiff friendly manner.

Certain facts should nonetheless be recognized. First, in Count I of the complaint, Graf asserts a claim as assignee of the rights of Torcia against Hospitality under the policy.[2] In furtherance of and as grounds for this claim, Graf has alleged that "[i]mmediately upon the entry of the Attachment, Graf and Torcia made demand upon Hospitality that Hospitality pay the cost to obtain a bond to release the Attachment, all pursuant paragraph 3 of the Supplementary Payments coverage set forth in the Policy." (Complaint at ¶ 19). In addition, Torcia explicitly demanded that Hospitality perform its contractual and policy obligations by purchasing the bond to cover the attachment of its Liquor License. This demand was made pursuant to the August 3, 2010 letter of personal counsel for Torcia, Thomas J. Rooke. A copy of this letter is attached here and incorporated by reference as Exhibit A. In that demand, Torcia was gravely concerned

---

[1] It appears that these documents submitted by Hospitality in support of its motion may be properly considered. Under Fed. R. Civ. P. 12(d), and "[i]f, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." There is a recognized exception to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint," which courts may properly consider on 12(b)(6) motions without converting the proceeding to one for summary judgment. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (quotation marks and citation omitted). The documents submitted by Hospitality, and that submitted by Graf (see Exhibit A attached here), appear to fall within this exception.

[2] Count II and Count III are claims for violations of General Laws, Ch. 93A and 176D. Hospitality only argues that these claims should be dismissed because the assigned contract claim should be dismissed. Since the contract claim is viable as set forth herein, there is no need for Graf to argue separately in favor of her Ch. 93A and 176D claims, except to state that the contract claim is viable.

that, in the absence of a bond to release the liquor license attachment as required by the policy, Graf would proceed with a keeper attachment, which would "force Torcia & Sons, Inc. to go out of business and allow [Graf] to liquidate their physical assets." As is evident form these facts, Hospitality placed Torcia in extreme and imminent peril by its inexplicable failure to simply purchase a bond as required by the policy.

In addition, and in any event, "[t]he bond requested by Graf and Torcia is and was at all times material readily available on the market and, in order to procure the bond requested, Hospitality was required simply to file an application and to post $115,000 in either cash or letter of credit collateral and to pay an annual premium of $2,300, which is 2% of the amount of the bond. (Complaint at ¶ 20).

"At all times material after the entry of the Attachment, the liquor license and the ongoing business of Torcia was impaired by the Attachment and Torcia and Lindsey were desirous of obtaining a discharge of the Attachment." (Complaint at ¶ 21).

"On or about October 27, 2010, Graf, Torcia, Lindsey and Hospitality agreed to certain settlement terms in an Agreement of Partial Settlement and Assignment (hereinafter "the Agreement"), which included, *inter alia*, an agreement in writing by the parties thereto that "Graf will discharge the [liquor license] Attachment, although it is the intention of the parties that nothing set forth herein shall limit or discharge or impair the rights or claims of Graf against Hospitality arising from or related to her claims for prejudgment interest of $111,124.26 included in the Amended Judgment or referenced in the [liquor license] Attachment . . ." (Complaint at ¶ 22). "The Agreement also provided that "Lindsey and Torcia shall and hereby do transfer, assign and transmit to Graf all of their rights, claims,

5

actions, and other interests against Hospitality, and against all of its agents, employees, representatives or contractors, relating to or arising from the Litigation, the Amended Judgment and the Policy." (Complaint at ¶ 23).

"In breach of its obligations under the Policy, and in breach of the covenant of good faith and fair dealing implied in the Policy, Hospitality refused to pay the cost to obtain a bond to release the Attachment, all as required by the Policy. (Complaint at ¶ 24). "The failure and refusal of Hospitality to pay the cost to obtain a bond to release the Attachment constitutes a breach of the obligations of Hospitality to Torcia and to Lindsey under the Policy, and a breach of the contract and Policy of insurance between Hospitality and Torcia, since coverage for the cost to obtain a bond to release the Attachment is explicitly provided for and is not excluded by the Policy." (Complaint at ¶ 25).

"Had Hospitality complied with its obligations under the Policy and paid the cost to obtain a bond to release the Attachment, the liability of Lindsey and Torcia on the Judgment would have been addressed and discharged when the Litigation was terminated and the bond was required to cover the amounts or prejudgment interest outstanding on the Judgment. (Complaint at ¶ 26). Thus, on the contract claim, Graf maintains that Hospitality breached the policy when it failed to pay the cost of the bond, which was $115,000 in either cash or letter of credit collateral, and to pay an annual premium of $2,300, which is 2% of the amount of the bond. (Complaint at ¶ 20).

Thus, and from these straightforward averments, the damages claimed by Graf on the Count I breach of contract claim are not for "the payment of prejudgment interest" as

6

Hospitality claims in its motion to dismiss. Rather, the damages claimed by Graf on the Count I breach of contract claim are simply for the cost of a bond to release the liquor license attachment. Torcia was entitled to be relieved of the attachment by the express terms of the Supplementary Payments coverage. The failure of Hospitality to comply with its policy obligations exposed Torcia to the closure and ultimate loss of its business. Thus, the simple and straightforward damages claimed by Graf in Count I are $117,300, with interest from the date of breach. As is obvious, this amount is well within the "limit of insurance" referred to in the Supplementary Payments coverage at issue in this case.

### 4. *Interpretation of the Insurance Policy.*

To resolve this dispute presented by the motion to dismiss, the Court must determine the meaning of certain provisions of the insurance policy, in essence a contract between Hospitality and Torcia. In conducting this inquiry, the Court evaluates the elements of a breach of contract claim and is guided by certain principles of contract interpretation applicable to insurance policies.

To state a plausible claim of breach of contract, "a plaintiff must allege facts indicating (1) the existence of a contract; (2) the plaintiff's own performance of its material obligations under the contract; (3) the defendant's breach of a material obligation under the contract; and (4) damages resulting from the breach." *Calautti v. American Home Mortg. Servicing, Inc.*, No. 10-0609A, 2012 WL 5240262 at 7 (Mass. Super. Aug. 7, 2012), citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961).

Here, there is no dispute as to the existence of the insurance policy between Hospitality and Torcia, the operative contract between the parties. Nor is there any

question but that Graf is the assignee of the rights of Torcia under the policy. Similarly, there is no dispute that Torcia performed its obligations at issue under the policy. Graf has also unequivocally alleged that Hospitality breached the policy by failing to purchase a bond to discharge the attachment on the liquor license of Torcia. Finally, Graf has alleged that Torcia has suffered damage and harm as a result of the breach of contract and policy provisions at issue.

The only issue before the court is thus whether the insurance policy at issue required Hospitality to purchase a bond to release the attachment of its liquor license. While Hospitality denies its obligation to pay the cost of the bond to release the attachment Graf secured on the Torcia Liquor licence, every reasonable reading of the insurance policy is to the contrary. From the averments of the compliant, there is no legitimate question but that Hospitality was in fact liable to pay for a bond to release the attachment of the Torcia liquor license.

Certain Massachusetts rules of construction pertain to the interpretation of the insurance policy at issue in this case. The interpretation of insurance contracts is generally a matter of law for the court." *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009), citing *Home Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 444 Mass. 599, 601 (2005). Insurance policies are construed "under the general rules of contract interpretation." *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000). Courts "begin with the actual language of the policies, given its plain and ordinary meaning. . . . 'consider[ing] what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' " *Id.*, quoting *Trustees*

*of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 848 (1993). Further, an insurance contract must be "construed with reference to all of its language and to its general structure and purpose and in the light of the circumstances under which it was executed." *Cofman v. Acton Corp.*, 958 F.2d 494, 498 (1st Cir. 1992). "In the absence of an ambiguity, [courts] must construe the words of [a] policy in their usual and ordinary sense." *Nascimento v. Preferred Mut. Ins. Co.*, 513 F.3d 273, 276 (1st Cir. 2008).

"Ambiguity exists when the policy language is susceptible to more than one meaning." *Scottsdale*, 561 F.3d at 77. However, ambiguity is not created simply because the parties disagree as to the interpretation of a term. *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 466, (1995), citing *Jefferson Ins. Co. v. Holyoke*, 23 Mass. App. Ct. 472, 475 (1987). Ultimately, "[a]mbiguous policy terms are construed in favor of the insured." *Scottsdale*, 561 F.3d at 77, citing *Hazen Paper Co. v. U.S. Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990).

These rules are easily summarized. First, absent evidence to the contrary, the Court presumes that words in the policy are used "in their usual and ordinary sense." *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 675 N.E.2d 1161, 1164 (1997). Second, since insurance policies are generally contracts of adhesion drafted by insurers, ambiguities generally should be resolved against the insurer and in favor of the insured. Id. at 1165. This rule of construction particularly applies to exclusionary provisions, such as the exclusion relied upon by Hospitality. Such exclusions from coverage must be "strictly construed," with any ambiguity in the exclusion construed against the insurer. Id. (quoting V*appi & Co. v. Aetna Cas. & Sur. Co.,* 348 Mass. 427,

9

204 N.E.2d 273, 276 (1965)). Thirdly, in interpreting the policy, the Court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Id. (quoting *Trustees of Tufts Univ. v. Commercial Union Ins. Co.,* 415 Mass. 844, 616 N.E.2d 68, 72 (1993)).

*5. Argument.*

*a. Graf's Contract Claim is Plainly Cognizable Under the Insurance Policy.*

Hospitality states that Graf has not alleged facts which plausibly suggest Hospitality's liability, arguing that her complaint "fails the plausibility inquiry because her claims are based upon a tortured reading of the liquor liability insurance policy." *Hospitality Memo of Law* at 1. To the contrary, the insurance policy clearly establishes Hospitality's liability for the cost to purchase a bond to release the attachment secured by Graf on the Torcia liquor license.

The relevant portion of the policy in question reads:

> We will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as "damages"[3] because of "bodily injury" to any person, caused by an "occurrence," if such liability is imposed upon the Insured by reason of the negligence of the Insured in the distribution, sale or serving of any alcoholic beverage at the Insured premises. We shall have the right and duty to defend any suit against the Insured seeking such "damages," even if the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as we deem expedient.
>
> …

---

[3] "Damages" is defined as "all monetary sums which the INSURED is legally obligated to pay as 'damages' including judgments, awards and settlements entered into with our prior written consent. DAMAGES also includes pre-judgment interest awarded against an INSURED." Insurance Policy, Exhibit 1 to *Hospitality Memo of Law*, § V.

*10*

> *We have no other obligation or liability to pay any other sums or perform any other acts of services unless they are explicitly provided for under SUPPLEMENTARY PAYMENTS.* (emphasis added).

Exhibit 1, § I(A).

The policy further states:

> We will pay with respect to any claim or "suit" we defend:
> …
> 2. The cost of bonds to release attachments, but only for bond amounts within the applicable limits of insurance. We do not have to furnish these bonds.
> …
> These payments will not reduce the limits of insurance on this Policy.

Exhibit 1, § I(C).

Hospitality argues that prejudgment interest is included in the policy's definition of "damages," and therefore the policy's limits of liability are inclusive of any prejudgment interest awarded. *Hospitality Memo of Law* at 14. That argument simply wrong. It ignores the basic fact that Graf here seeks recovery not for prejudgment interest but rather for the undisputed cost of a bond to release the attachment that was entered against Torcia, all under the clear terms of the Supplementary Payments coverage of the policy. Graf does not seek recovery for prejudgment interest beyond the "limit of insurance." Far from a "tortured reading" of the policy, this is an undeniable fact.

The fallacy of Hospitality's argument is revealed by close scrutiny of the facts as they apply to the scope of coverage provided in the insurance policy. Hospitality argues erroneously that "The limits of liability under the Liquor Liability Insurance Policy are

$500,000 per person." (*Hospitality Memo of Law* at Page 2). This is erroneous. The "Limits of Insurance" under the policy is $500,000. The limit of the contractual liability of Hospitality is, because of the Supplementary Payments coverage, in excess of $500,000. To be sure, "Limits of Insurance" is a term specific to the policy and are set forth in the policy as $500,000. Under the Insuring Agreement set forth in the policy at § I(A), Hospitality is required to pay that amount as damages and prejudgment interest assessed against Torcia as its insured.

That is not however the "limit of liability" of Hospitality to Torcia under the policy. The per-person "limits of liability" under the policy is $500,000. Exhibit 1, § III and Declarations. Significantly, the policy provides Supplementary Payments coverage, in excess of $500,000.[4] In this connection, the policy also provides for certain supplementary payments, which Hospitality is bound to pay, including ***"[t]he cost of bond to release attachments, but only for bond amounts within the applicable limits of insurance. We do not have to furnish these bonds. . . . These payments will not reduce the limits of insurance of this Policy."*** (emphasis added) Exhibit 1, § I(C).

Thus, under the supplementary payments coverage, Hospitality is liable for amounts beyond the "Limits of Insurance" set forth in the policy. Specifically, Hospitality has contractually obligated itself to purchase a bond to release the liquor license attachment - so long as the "***bond amounts [are] within the applicable limits of insurance.***" There is no doubt in this case that the amount of the bond to be purchased

---

[4] For instance, and as an example, Hospitability paid in excess of $500,000 under the Supplementary Payments provisions for assessed costs of $4,071.93 and as post-judgment interest of $47,935.62. Settlement Agreement, Exhibit 8 to *Hospitality Memo of Law*, page 1 and 3.

was $115,000, an amount well within the "Limits of Insurance" defined by the policy as $500,000.[5]

Hospitality also erroneously argues that "[d]espite the fact the limits of insurance of the Liquor Liability Insurance Policy are $500,000 per person, the Plaintiff contends that Hospitality is obligated to pay the prejudgment interest of $111,124.26 in addition to the amended judgment of $500,000 under paragraph 2 of the Supplementary Payments section." (*Hospitality Memo of Law* at page 7). This is incorrect. Simply stated, Graf does not contend that Hospitality is obligated by the policy to pay prejudgment interest in the circumstances of this case. Rather, Graf quite simply argues that under the Supplementary Payments provisions, Hospitality is obligated to pay, ***"[t]he cost of bond to release attachments, but only for bond amounts within the applicable limits of insurance. We do not have to furnish these bonds."***

Graf's interpretation is based upon a fair reading of the policy terms. First, the Supplementary Payments provide explicitly that ***"These payments will not reduce the limits of insurance of this Policy."*** This provision establishes that Hospitality expected to pay for bonds amounts "up to the applicable limits of insurance" without reducing those limits. Secondly, this also shows that so long as the bond amounts were within the applicable limit of insurance, Hospitality intended not to rely upon the "limits of insurance" as a limit of its payment liability under the Supplementary Payments.

---

[5] At the time that the attachment was entered on April 9, 2010, Hospitality had not paid a dime to Graf under the terms of the policy or otherwise. The bodily injury policy limit was paid to Graf on or about October 28, 2010. when she acquired by assignment the rights of Torcia on the bond claim. *Attachment* and *Settlement Agreement*, Exhibit 7 and 8 respectively to *Hospitality Memo of Law*,

*13*

By its interpretation of this coverage for Supplementary Payments, Hospitality ignores the plain language and seeks to rewrite the terms of the policy. In essence, Hospitality argues that it will pay for bonds to release attachments entered only on claims that are covered by the policy. If this was the intent of Hospitality, it could have expressed that intent in clear and unmistakable language under the Supplementary Payments coverage. [6]

Hospitality ignores these considerations in arguing that its liability under the Supplementary Payments coverage cannot exceed the limit of insurance. A plain and ordinary reading of this provision indicates that the amount of the bond itself must not exceed the applicable limits of liability. In other words, the cost of the bond may not be greater than $500,000. If Hospitality had intended to foreclose the possibility of ever paying in excess of $500,000, surely it would not have added a provision allowing for *supplemental and additional* payments for attachment bonds, the payment of which would not to reduce the limit of insurance. Hospitality could have simply listed supplementary payment items 1 through 6 under the definition of "damages" if it desired to limit the sum of all payments made under the policy to $500,000. As noted, the policy states that Supplemental Payments "will not reduce the limits of [the] Policy." Exhibit 1, § I(C). While Hospitality insists that "reduce" as used in this phrase actually means "reduce *or increase*," the only reasonable construction of this sentence is that any

---

[6] In this scenario, the coverage for attachment bonds would be largely illusory since, under Massachusetts law, an attachment may only be entered where there is no available liability insurance. See Mass. R. Civ. P. 4.1 (governing attachment of real estate, goods and chattels) and 4.2 (governing trustee attachment).

supplemental payments are outside of and separate from the limits of liability. *Hospitality Memo of Law* at page at 15 (emphasis added).

In interpreting the policy, the Court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Trustees of Tufts Univ. v. Commercial Union Ins. Co.,* 415 Mass. 844, 616 N.E.2d 68, 72 (1993). To accept the interpretation urged by Hospitality would ignore this common sense principle.

The most that Hospitality can say about the Supplementary Payments coverage is that the coverage is ambiguous as applied to the circumstances of this case. Assuming for analysis that there is an ambiguity, controlling precedent requires an interpretation that favors Graf and the invocation of coverage. On this point, the interpretation of an insurance contract is a matter of law, and like all contracts, insurance contracts are to be construed according to their fair and reasonable meaning. *Cody v. Conn. Gen. Life Ins. Co.,* 387 Mass. 142, 439 N.E.2d 234, 237 (1982). "A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms. But, if the contract is ambiguous, doubts as to the meaning of the words must be resolved against the insurance company that employed them and in favor of the insured" *Id.* (internal quotations and citations omitted).

      b.     *The Extra-jurisdictional Precedent is Unavailing.*

Hospitality was unable to find any Massachusetts case law in support of its motion, and relied instead on extra-jurisdictional law. Notably, the case that Hospitality primarily relies on, *St. Paul Fire & Marine Ins. Co. v. Nolen Group, Inc.*, No. 02-8601, 2007 WL 4245740 (E.D. Pa. Nov. 30, 2007), is easily distinguishable. That case

discussed an insurer's obligations with respect to the payment of a supersedeas bond and held only that the bond amount required by the policy need not exceed the limit of insurance provided by the policy. Since Graf does not argue here and has never claimed that Hospitality was required to purchase a bond the cost or amount of which exceeded the $500,000 limit of insurance, this decision is of no assistance to Hospitality.

Similarly, the other cases cited by Hospitality all stand for the proposition that the bond amount required by the policy at issue in each case need not exceed the limit of insurance provided by the policy. Again, and because Graf does not argue here that Hospitality was required to purchase a bond the cost or amount of which exceeded the $500,000 limit of insurance, these additional decisions are distinguishable on their face and of no assistance to Hospitality.

6. *Conclusion.*

In the final analysis, Hospitality has confused the analysis by conflating the meaning of the "limit of insurance" under the policy with the limits of its contractual liability to Torcia for the cost of a bond to release the attachment. Because of the clear terms of the Supplementary Payments coverage provided in the policy, the contractual liability of Hospitality to Torcia for the cost of a bond is broader and more extensive than the "limit of insurance" under the policy. Taken together, Graf's complaint and the extrinsic materials submitted by Hospitality set forth facts which establish beyond cavil that Graf is entitled to substantial relief in the circumstances. As such, and at the minimum, the claims of Graf are certainly plausible on their face. Without doubt, "the facts, evaluated in [the required] plaintiff-friendly manner, contain enough meat to

support a reasonable expectation that an actionable claim may exist." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008).

For these reasons, the plaintiff, Katie Graf, respectfully requests that the Court deny the motion of the defendant, Hospitality Mutual Insurance Company, to dismiss her complaint.

7. *Request for Oral Argument.*

Pursuant to Local Rule 7.1(E), the plaintiff, Katie Graf, respectfully request that the Court schedule oral argument on the Motion to Dismiss of the Defendant.

Dated: April 29, 2013                                THE PLAINTIFF,

*/s/ Mark J. Albano*

By:_____
Mark J. Albano, Esq.
DALSEY & ALBANO
One Monarch Place, Suite 1150
Springfield, MA 01144-1150
Tel: 413-736-6971
Fax: 413-746-9224
B.B.O. No.: 013860
Email: malbano@dfalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2013, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

*/s/ Mark J. Albano*
_____
Mark J. Albano, Esq.

*17*