UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATIE GRAF,                          )
                                     )
                    Plaintiff        )
                                     )
          v.                         )
                                     )    Civil Action No. 13-30070-KPN
HOSPITALITY MUTUAL                   )
INSURANCE COMPANY,                   )
                                     )
                    Defendant        )

MEMORANDUM AND ORDER WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS (Document No. 5)
July 26, 2013

NEIMAN, U.S.M.J.

This case arises out of prior state court litigation in which Katie Graf ("Plaintiff") sued Torcia & Sons, Inc. ("Torcia") and Ronald Lindsey, an employee of a restaurant operated by Torcia, for injuries she sustained there. Plaintiff received a judgment in her favor. The court then attached Torcia's liquor license ("Attachment") in order to secure payment of pre-judgment interest to Plaintiff. Torcia requested that its insurer, Hospitality Mutual Insurance Company ("Defendant"), pay the cost of a bond to discharge the attachment, but Defendant refused. Now, in the case at bar, Plaintiff, as assignee of the rights of Torcia against Defendant, asserts that Defendant's refusal to pay the cost of the bond constituted a breach of the Liquor Liability Insurance Policy ("Policy") which insured Torcia. Defendant disagrees and has moved to dismiss, arguing that Plaintiff has failed to state a claim upon which relief may be granted.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c);

Fed. R. Civ. P. 73. For the reasons which follow, the court will grant Defendant's motion.

## I. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Sommerville*, 972 F.2d 440, 442-43 (1st Cir. 1992). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Recently, the Supreme Court made clear that, under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint that states a plausible claim for relief, on its face, will survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The Court explained that "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. BACKGROUND

The following facts come mainly from Plaintiff's complaint. However, the court has also considered the Liquor Liability Insurance Policy ("Policy") and certain documents related to the prior state litigation underlying this suit, because Plaintiff's complaint explicitly refers to these documents. *See Trans-spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("'[W]hen . . . a complaint's factual

allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'") (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998)). The facts and all reasonable inferences are stated in a light most favorable to Plaintiff as the party opposing dismissal. *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002).

A. <u>The Prior Litigation Underlying the Present Suit</u>

After a jury trial and a verdict in favor of Plaintiff in the prior litigation, the court awarded $500,000 together with pre-judgment interest of $111,124.26. (Compl. ¶¶ 11-12.) Defendant informed Torcia and Lindsey of its contention that the pre-judgment interest was not covered by the Policy. (Id. at ¶ 13.) Plaintiff then sought and obtained the Attachment on Torcia's liquor license in the amount of $115,000. The state trial court issued the attachment because no insurance coverage was available to pay the pre-judgment interest of $111,124.26. (Id. at ¶ 15-16.) Both Plaintiff and Torcia then made demand upon Defendant to pay the cost to obtain a bond to discharge the Attachment. (Id. at ¶ 19.) Torcia's demand letter dated August 3, 2010 alleged that the bond was needed in order to prevent Plaintiff from securing a "keeper attachment" and seizing Torcia's "daily/weekly assets," which would force Torcia "to go out of business." (Exhibit A (attached to Plaintiff's Memorandum).)

In October, 2010, Plaintiff, Torcia, Lindsey and Defendant entered into a written settlement agreement ("Agreement") providing that (1) Plaintiff would discharge the Attachment; (2) Torcia and Lindsey would assign their rights against Defendant to

Plaintiff; (3) Lindsey and Torcia would withdraw their pending appeal; (4) Defendant would pay $552,007.05 including costs and post-judgment interest to Plaintiff; (5) Plaintiff would reserve her rights against Defendant for the pre-judgment interest, (id. at ¶ 22-23); and (6) Plaintiff and Defendant would litigate their dispute over pre-judgment interest in separate litigation and, if Plaintiff were successful, Defendant would pay damages as though the Attachment were still in effect.  (Exhibit 8 (attached to Defendant's Memorandum) ¶ 5.)

In February of 2013, Plaintiff, having been assigned Torcia and Lindsey's rights, filed the present action against Defendant alleging breach of contract and unfair and deceptive acts and practices in violation of Massachusetts General Laws, Ch. 93A and 176D, arising out of Defendant's refusal to pay the cost of the bond.  In her complaint, Plaintiff alleges that:

> the bond requested . . . is and was at all times material readily available on the market and, in order to procure the bond requested, Hospitality was required to simply file an application and to post $115,000 in either cash or letter of credit collateral and to pay an annual premium of $2,300, which is 2% of the amount of the bond.

(Compl. ¶ 20.)

B.  <u>The Limits of Liability under the Policy</u>

The maximum amount ("Limits of Insurance") Defendant was required to pay for damages due to bodily injury ("Damages") under the Policy is $500,000 per person. (Exhibit 1 (attached to Defendant's Memorandum) at Declarations, § III(A), (B).) Damages is defined by the Policy as including "pre-judgement interest awarded against an Insured."  (Id. at § 5(C).)  With regard to a third party's right to sue, the Policy states: "[a] person or organization may sue us to recover. . . on a final judgment against an

4

Insured . . . but we will not be liable for 'damages' that are not payable under the terms of this Policy that are in excess of the applicable limit of insurance." (Id. at § 4(B).)

Aside from the $500,000 Limit of Insurance for Damages, Defendant was also obligated to make payments "explicitly provided for under Supplementary Payments." (Id. at § 1(A).) The Supplementary Payments section provides as follows:

> We will pay with respect to any claim or "suit" we defend:
>
> 1. All expenses we incur.
> 2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
> 3. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.
> 4. All costs taxed against the Insured in the "suit".
> 5. All interest on that portion of any judgement we owe that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.
> 6. Expenses incurred by the insured for first aid to others at the time of an occurrence to which this insurance applies.
>
> These payments will not reduce the limits of insurance of this Policy.

(Id. at § 1(C).)

After removing the action to this court under 28 U.S.C. § 1446(a), Defendant filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), arguing that it is not obligated to pay the cost of the bond under the Policy. For the reasons that follow, the court agrees.

### III. PLAINTIFF'S COMPLAINT

Plaintiff's complaint contains three counts: breach of contract for refusal to pay the cost to obtain a bond to release the Attachment (Count One), unfair and deceptive

5

acts and practices prohibited by Massachusetts General Laws, Ch. 93A §§ 2 and 11, and Massachusetts General Laws, Ch. 176D, § 3 (Count Two), and unfair and deceptive acts and practices prohibited by Massachusetts General Laws, Ch. 93A, §§ 2 and 9 (Count Three). All three counts are predicated on the allegation that Defendant breached its obligations under the Policy by refusing to pay the cost of the bond. Thus, if the Policy does not require that Defendant pay the cost of the bond, all three counts must be dismissed for failure to state a claim.

IV. STANDARD OF CONTRACT INTERPRETATION

"The interpretation of an insurance contract is a question of law . . . ." *Metropolitan Life Ins. Co. v. Cotter*, 984 N.E.2d 835, 844 (Mass. 2013). The "[i]nterpretation of language an insurance contract 'is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense.'" *Id.* (quoting *Metropolitan Prop. & Cas. Ins. Co. v. Morrison*, 951 N.E.2d 662, 671 (Mass. 2011)). Although "ambiguities in the language of the contract are interpreted against the insurer," *id.*, "a policy provision 'is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.'" *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 66 (1st Cir. 2012) (quoting *Citation Ins. Co. v. Gomez*, 688 N.E.2d 951, 953 (Mass. 1998)).

V. DISCUSSION

In the court's view, the Policy at issue is susceptible to only one reasonable interpretation -- that it did not require Defendant to pay pre-judgment interest directly or the cost of the bond. Since Plaintiff has not pled facts which raise a "reasonable

inference that the defendant is liable," Defendant's motion to dismiss will be granted. *Iqbal*, 556 U.S. at 663. The court's reasoning follows.

A. <u>Pre-Judgment Interest</u>

Defendant argues it was not obligated to pay pre-judgment interest because such interest was an amount of "Damages" in excess of the $500,000 Limits of Insurance set forth in the Policy. The court agrees. To be sure, "Damages" is expressly defined by the Policy as including "pre-judgement interest awarded against an insured." It must be remembered, however, that Plaintiff had won a verdict of $500,000, which Defendant paid. Since the pre-judgment interest of $111,124.46 was an award of Damages in excess of the $500,000 limit, Defendant was not required to pay it directly.[1]

B. <u>The Cost of the Bond</u>

While Plaintiff appears to acknowledge that Defendant could not be required to pay the pre-judgment interest directly, for the reasons set forth above, she argues nonetheless that the Supplementary Payments section of the Policy, specifically Section 1(C)(2), did require Defendant to pay the cost of a bond to release the attachment for the amount of that interest. Section 1(C)(2) provides that Defendant is to pay "the cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance." (Exhibit 1 (attached to Defendant's Memorandum) at §

---

[1] Defendant, however, did pay *post*-judgment interest which it was specifically obligated to do under the Supplementary Payments section of the Policy, Section 1(C)(5). *See Fratus v. Republic W. Ins. Co.*, 147 F.3d 25, 28 (1st Cir. 2008) (provision for the payment of post-judgment interest is referred to as a "standard interest clause").

I(C)(2).) In response, Defendant argues that, since the requested bond in this case was sought to discharge an attachment for an amount of pre-judgment interest in excess of the $500,000 limit, which had been reached, the bond amount, *i.e.*, $115,000.00, was not "within the applicable limit of insurance." Given the unambiguous language of the Policy, the court finds that Defendant has the far better argument.

Defendant's interpretation of the Policy finds support in an Eastern District of Pennsylvania decision, which addressed a dispute over a policy with similar provisions. *See St. Paul Fire & Marine Ins. Co. v. Nolen Group, Inc.*, 2007 WL 4245740 (E.D. Pa. Nov. 30, 2007). The plaintiff there won an $8.9 million verdict against the defendant insured. *Id.* at *1. The court required the defendant to post a supersedeas bond in the full amount of the judgment to stay execution pending the outcome of an appeal. *Id.* The defendant's insurer, however, posted a bond only for $2.8 million, the limit of insurance under that policy. *Id.* Like the Policy here, the policy in *Nolen Group* contained a supplementary payments section requiring the insurer "to pay the cost of bonds to release attachments, 'but only for bond amounts *within the applicable limit of insurance*'"; it also provided, as here, "that the insurer '[does] not have to furnish these bonds.'" *Id.* at *3, *3 n.7 (alteration in original). The plaintiff then tried to garnish the $2.8 million amount of coverage while, at the same time, opposing the insurer's attempt to release the bond should the garnishment be allowed. *Id.* at *2. Essentially, the plaintiff sought to receive twice the limit of insurance.

The court ruled in favor of the insurer, holding that, in the absence of any legal

requirement that the insurer itself secure a bond for more than the policy limit, the insurer could not be liable for amounts over the policy limit. *Id.* at *4; *see also Courvoisier v. Harley Davidson of Trenton, Inc.*, 742 A.2d 542 (N.J. 1999) (holding that an insurance company was not legally required to post a supersedeas bond greater than the policy limit to stay execution on the part of the judgment covered by the policy); *Missouri ex rel Brickner v. Saitz*, 664 S.W.2d 209 (Mo. 1984) (same).  Here, too, the Policy does not require Defendant to indemnify a bond amount beyond the policy limit or to pay the cost for such a bond under the present circumstances.

Persevering, Plaintiff argues that "limits of insurance" in the context of *bond amounts* is different from the Limits of Insurance for *damages*.  In other words, Plaintiff asserts, Defendant was obligated to pay the cost of a bond to release an attachment as long as the bond amount itself was not more than a *separate* $500,000 limit.  In essence, Plaintiff argues, Section 1(C)(2) requires Defendant to pay not only the premium but, also, to indemnify the bond as a Supplementary Payment, although with a separate $500,000 limit.  This interpretation, while creative, does not withstand scrutiny.

Under Massachusetts law, "insurance policies should be construed as a whole 'without according undue emphasis to any particular part over another.'" *Mission Ins. Co. v. U.S. Fire Ins. Co.*, 517 N.E.2d 463, 466 (Mass. 1988) (quoting *Woogmaster v. Liverpool & London & Globe Ins. Co.*, 45 N.E.2d 394, 396 (Mass. 1945)).  Here, it is unreasonable to interpret "applicable limits of insurance" in the context of bond amounts in isolation from other sections of the Policy, which specifically define "Limits of Insurance" as the maximum overall amount Defendant will pay for damages.  *See*

*Surabian Realty Co. v. NGM Ins. Co.*, 971 N.E.2d 268, 271 (Mass. 2012) ("We interpret all words [in an insurance policy] in their usual and ordinary sense, and construe policies as a whole, without according special emphasis to any particular part over another."). Plaintiff's reliance on yet other language in Section 1(C), namely, that payments made pursuant to that section "will not reduce the limits of insurance of this Policy," is equally unpersuasive. This language simply means that payments made pursuant to the Supplementary Payments provision, Section 1(C), including the cost of bonds, are *supplemental* to the $500,000 limit. It does not change the "applicable limits of insurance" nor mean, let alone imply, that the cost of a bond could be part of a separate $500,000 limit.

Moreover, Plaintiff's argument to the contrary, Section 1(C)(2) only requires Defendant to cover the premium and other incidental costs, not to indemnify the bond. There is a clear difference in this provision between the "cost" of bonds to release attachments and "bond amounts." Of course, as long as a bond amount is within the overall Limits of Insurance, taking into account other damages, the cost of the bond is basically all that would be needed, as the policy itself would serve as security for the bond. Here, however, given the fact that the underlying judgment reached the $500,000 limit, the bond amount would exceed the limit and it was not Defendant's obligation to pay the bond amount or the premium for the bond.

Finally, Plaintiff appears to suggest, albeit in a footnote, that Defendant could have secured the bond while Torcia's appeal was pending and *before* the judgment had actually been paid by Defendant to Plaintiff. The court disagrees. First, Plaintiff provides no analysis to support this argument. Second, Plaintiff's argument, if

argument it is, runs up against the unambiguous language of the Policy. If Torcia had been unsuccessful on appeal, then under Plaintiff's theory she would have been entitled to have Defendant pay not only the $500,000 judgment but, as well, the bond amount (and the bond premium, for that matter). As in *Nolen Group*, however, the Policy did not render Defendant liable beyond the overall Limits of Insurance, $500,000.

## VI. CONCLUSION

The Policy is clear that Defendant was not required to pay the cost of the bond because the bond amount of $115,000 was beyond the Limits of Insurance, the $500,000 judgment having already been allocated towards that end. Since Plaintiff has not alleged facts sufficient to support her claims for relief, her complaint must be dismissed. Accordingly, Defendant's motion is ALLOWED.

IT IS SO ORDERED.

DATED: July 26, 2013

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge