# United States Court of Appeals
## For the First Circuit

---

No. 13-2167

KATIE GRAF,

Plaintiff, Appellant,

v.

HOSPITALITY MUTUAL INSURANCE COMPANY,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Kenneth P. Neiman, U.S. Magistrate Judge]

---

Before

Lynch, Chief Judge,
Thompson, Circuit Judge,
and Smith,[*] District Judge.

---

Mark J. Albano, with whom Dalsey & Albano was on brief, for appellant.
James E. Harvey, Jr., with whom John F. Brosnan and O'Malley and Harvey, LLP were on brief, for appellee.

---

June 11, 2014

---

[*]Of the District of Rhode Island, sitting by designation.

**SMITH, <u>Chief District Judge</u>**. The Appellee, Hospitality Mutual Insurance Company ("Hospitality"), issued a Liquor Liability Insurance Policy (the "Policy") to Torcia & Sons, Inc. ("Torcia"). Torcia owns and operates the Fat Cat Bar & Grill (the "Fat Cat"), a Springfield, Massachusetts establishment. The Policy represented the full extent of Torcia's applicable liability coverage.

The Appellant, Katie Graf, secured a judgment in her favor in Massachusetts state court after she was injured while a patron on the Fat Cat's premises. Following a jury trial, Graf was awarded $500,000 in damages and $111,124.26 in prejudgment interest against Torcia and a Fat Cat employee.[1]

Hospitality disclaimed liability for the prejudgment interest portion of the award, arguing that the terms of the Policy limited coverage to $500,000 per person, per incident. As a result, Graf sought and was granted a writ of attachment on Torcia's liquor license to secure the excess judgment.

Graf and Torcia sought payment from Hospitality for the cost of a bond to release the attachment. To obtain such a bond, Hospitality would have been required to post approximately $115,000 in cash or other collateral, and pay an annual premium of $2,300. Again, Hospitality refused on grounds that it was not liable for the cost of the bond because the $500,000 damages award had independently triggered the Policy's coverage limit.

---

[1] References to "Torcia" include this employee.

The parties then entered into a settlement agreement. In relevant part, the settlement agreement provided that Graf would discharge the attachment of the liquor license and Torcia would assign its rights against Hospitality to Graf. Pursuant to the assignment of rights, Graf brought suit against Hospitality in Massachusetts state court, and the action was then removed to federal court in the District of Massachusetts.[2]

In the ensuing litigation, the magistrate judge agreed with Hospitality's interpretation of the Policy and granted Hospitality's Motion to Dismiss, see Graf v. Hospitality Mut. Ins. Co., 956 F. Supp. 2d 337 (D. Mass. 2013), then denied Graf's subsequent Motion to Amend Judgment in a text order. The magistrate judge found that the $500,000 damages award represented the full extent of recoverable proceeds under the Policy. He reasoned that to require Hospitality to pay for the cost of the bond would have expanded Hospitality's liability in contravention of the express terms of the Policy. Graf now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we AFFIRM.

## I. Standard of Review

We review the magistrate judge's decision to grant Hospitality's Motion to Dismiss de novo. Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). To

---

[2] The parties assented to assignment of the case to a magistrate judge.

-3-

survive a motion to dismiss, a complaint "must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." Alt. Energy, 267 F.3d at 33. But, there is a narrow exception for certain documents that the parties agree are authentic and that are central to the plaintiff's claims. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

District courts are afforded considerable discretion in reviewing motions to amend judgment under Federal Rule of Civil Procedure 59(e); therefore, we review the denial of Graf's Motion to Amend Judgment for manifest abuse of discretion. ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008).

With respect to our interpretation of the Policy, the parties agree that Massachusetts law governs. We "construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter." Jacobs v. U.S. Fid. & Guar. Co., 417 Mass. 75, 76, 627 N.E.2d 463, 464 (1994). "If there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it." Hazen Paper Co. v. U.S. Fid. & Guar. Co., 407 Mass. 689, 700, 555 N.E.2d 576, 583 (1990). But, under Massachusetts law, "ambiguity – unlike beauty – does not lie wholly in the eye of the beholder. An

ambiguity must be real. A policy provision will not be deemed ambiguous simply because the parties quibble over its meaning." Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 66 (1st Cir. 2012). And, "[o]f course, whether a provision is ambiguous is a question of law that we must answer ourselves . . . ." HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 574 (1st Cir. 2014) (discussing Massachusetts law).

## II. The Policy

The Policy obligates Hospitality to "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as 'damages' because of 'bodily injury' to any person, caused by an 'occurrence.'" Policy ¶ I(A). Nevertheless, Hospitality has "no other obligation or liability to pay any other sums or perform any other acts of (sic) services unless they are explicitly provided for under SUPPLEMENTARY PAYMENTS." Id.

The definitions of two terms are of central importance. First, "damages" is defined to mean "all monetary sums which the INSURED is legally obligated to pay as damages including . . . pre-judgement interest awarded against an INSURED." Id. at ¶ V(C). With respect to "Supplementary Payments," the Policy provides that:

> We will pay with respect to any claim or "suit" we defend:
> . . .
> <u>The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance</u>. We do not have to furnish these bonds.
> . . .

-5-

> These payments will not reduce the limits of insurance of this Policy.

Id. at ¶ I(C)(2) (emphasis added).

The limits of insurance are addressed in Sections III and IV. Section III expressly incorporates by reference a $500,000 per person and $1,000,000 per occurrence coverage limit. Id. at ¶ III(B) ("The Per Person limit stated in the Declarations is the most we will pay to one or more persons as the result of 'bodily injury' to any one person in any one 'occurrence.'"). Section IV provides that "[a] person . . . may sue [Hospitality] to recover . . . on a final judgment against an Insured obtained after an actual trial; but [Hospitality] will not be liable for 'damages' that are not payable under the terms of this Policy that are in excess of the applicable limit of insurance." Id. at ¶ IV(B)(2).

### III. Discussion

We agree with the magistrate judge that the Policy is susceptible to just one reasonable interpretation. The Policy contains a "Supplementary Payments" provision; Section I(C)(2) unambiguously obligates Hospitality to pay for the cost of certain bonds, but only insofar as those bonds are for amounts "<u>within the applicable limit of insurance</u>." (emphasis added). Here, the limit of insurance was reached by virtue of the $500,000 damages award, and the Policy did not obligate Hospitality to pay for the cost of

a bond covering a prejudgment interest award beyond that amount.[3] Graf's arguments to the contrary may be quickly dispatched.

Graf argues here, as she did before the magistrate judge, that Section I(C)(2) requires Hospitality to pay for the cost of a bond to release the liquor license because the amount of that bond, some $115,000, is itself within the $500,000 Policy limit. Graf vigorously pursues this point, but her argument tortures what we believe to be the plain meaning of the applicable terms. As we have noted, Section I(C)(2) provides that Hospitality will pay "with respect to any claim or 'suit' [it] defend[s]: . . . [t]he cost of bonds to release attachments, <u>but only for bond amounts within the applicable limit of insurance</u>." (emphasis added).

Taken to its conclusion, Graf's argument would obligate Hospitality to pay for a bond (or perhaps even multiple bonds) so long as the amount of the bond was $500,000 or less, irrespective of whether the coverage limit had already been reached, potentially increasing Hospitality's exposure by 100% (or even more, depending on the applicability of the occurrence limitation). This, we believe, makes no sense and cannot be squared with the plain language of the Policy. To accept Graf's proposed reading, we would have to disregard the second clause in the above-cited sentence, which plainly limits the circumstances in which

---

[3] To be sure, Hospitality's obligation to pay "damages" includes awards of prejudgment interest, Policy ¶ V(C), but only where those awards are within the Policy limit, <u>id.</u> at ¶ I(C)(2).

-7-

Hospitality must pay for the cost of a bond to situations in which the bond amount is within the applicable limit of insurance. See Jacobs, 417 Mass. at 77, 627 N.E.2d at 464 ("[E]very word and phrase must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable . . . .") (citations omitted).

What is more, Graf's position is belied by other Policy provisions. Section III provides that "[t]he Per Person limit [of $500,000] . . . is the most we will pay to one or more persons as the result of 'bodily injury' to any one person in any one 'occurrence.'" Section IV adds further clarity by providing that even where a plaintiff obtains a judgment greater than the coverage limit, Hospitality will not be liable for damages "in excess of the applicable limit of insurance." Even if the meaning of the Supplementary Payments provision, standing alone, were uncertain (and it is not), that provision clearly does not provide coverage here when read in light of the other terms of the Policy. See USM Corp. v. Arthur D. Little Sys., Inc., 546 N.E.2d 888, 893 (Mass. App. Ct. 1989) ("The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.").

Graf argues next that the magistrate judge erred by relying on non-binding and factually distinguishable precedent. See, e.g., St. Paul Fire & Marine Ins. Co. v. Nolen Group, Inc.,

-8-

Nos. 02-8601, 03-3192, 03-3651, 2007 U.S. Dist. LEXIS 88025 (E.D. Pa. Nov. 30, 2007). We acknowledge, as did the magistrate judge, that the bond at issue in St. Paul Fire is a supersedeas bond and not an attachment bond. But the authority that Graf cites, see, e.g., Arnett v. Mid-Continent Cas. Co., No. 08-cv-2373-T-27EAJ, 2010 U.S. Dist. LEXIS 71666 (M.D. Fla. July 16, 2010), offers little help because those cases do not involve awards that exceeded the available insurance coverage. Ultimately, we are left with what we believe to be the plain language of the Policy obligating Hospitality to pay for the cost of only those bonds whose amounts are within the applicable limit of insurance.

Next, Graf quarrels with a factual statement in the magistrate judge's Memorandum and Order granting Hospitality's Motion to Dismiss. There, the magistrate judge concluded that "[t]he Policy is clear that [Hospitality] was not required to pay the cost of the bond because the bond amount . . . was beyond the Limits of Insurance, the $500,000 judgment having already been allocated towards that end." (emphasis added). Graf notes that at the time that Torcia and Graf sought payment for the cost of the bond to release the attached liquor license, Hospitality had not yet made payment on the $500,000 damages award (likely because Torcia had appealed the underlying judgment). Graf's argument misses the mark. Hospitality's payment obligation arose upon the return of the judgment in Graf's favor against Hospitality's

-9-

insured, Torcia. That Hospitality did not make payment until a later date is of no consequence in assessing Hospitality's total liability under the Policy.

Finally, Graf raises a series of arguments about the nature of attachment bonds, and suggests that their unique function lends support to her interpretation of the Policy. Graf relies principally on the notion that a court may grant a writ of attachment "only after . . . a finding by the court that there is a reasonable likelihood that the plaintiff will recover . . . in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment." See Mass. R. Civ. P. 4.1(c). In essence, Graf suggests that because attachment bonds are available only where recoverable proceeds exceed available liability coverage, the Policy must contemplate an additional $500,000 amount for the cost of attachment bonds.

We are not convinced because there are scenarios in which a plaintiff might obtain an attachment for a bond amount within the limit of insurance, for which Hospitality would be obligated to pay. As an example, a court might grant an order of pretrial attachment where the nature and extent of the defendant's insurance coverage was uncertain. See, e.g., Erkan v. New England Compounding Pharmacy, Inc., Nos. 12-12052-FDS, 12-12066-FDS, 2012 U.S. Dist. LEXIS 172653, at *7 (D. Mass. Nov. 21, 2012) (granting

-10-

an attachment but noting that "[a]lthough there appears to be liability insurance, there is no evidence . . . of the amount and scope of the coverage."). In this scenario, so long as the bond amount was within the limit of insurance, Hospitality would be liable for its cost.

We need go no further. For the reasons set forth, we agree with the magistrate judge's interpretation of the Policy and with his dismissal of Graf's suit. We need not separately address the magistrate judge's denial of Graf's Motion to Amend Judgment because our finding necessarily precludes Graf's ability to demonstrate a manifest abuse of discretion on the part of the magistrate judge. See ACA Fin. Guar., 512 F.3d at 55.

### IV. Conclusion

The Policy unambiguously obligates Hospitality to pay the cost of bonds only for bond amounts that, together with any other liabilities, fall within the liability cap of $500,000. For that reason, the grant of Hospitality's Motion to Dismiss and denial of Graf's Motion to Amend Judgment are AFFIRMED.

**Affirmed**.